The next case today is Wilmington Savings Bank Fund Society v. Nina B. Collart et al. Appeal number 191533. Attorney Moriarty, you may proceed. Thank you. May it please the Court, Thomas Moriarty for all the defendants in this matter. With the Court's permission, I would like to reserve two minutes for rebuttal. Yes. Thank you, Your Honor. It's defendant's position that the plaintiff is not entitled to an equitable lien on defendant Nina Collart's home. In the first instance, it should be clear that the $500,000 loan to Lucian Collart was simply his unsecured personal debt. The district court found that Lucian Collart did not have any ownership of the property and no right to mortgage. Wilmington dismissed its cross-appeal, challenging the district court's holding in that regard. Therefore, this is not a circumstance where a borrower that owned the property failed to perfect a lien on that property for some technical reason. In this instance, Lucian Collart simply didn't own the property. Now, it would certainly be a factual overstatement to say that he was a stranger to this property, but for purposes of assessing the question presented and whether or not there was a connection between the Harwich Port property and this transaction, it is fair to say, correct to say, that Lucian Collart was a stranger to this property. Counsel, I'd like to ask a question about what the record shows on a point that I think may be important. A court order was secured to sell the property, really, on Lucian's behalf, and as I understand it, that court order was justified in part because it would allow the funds realized to, I think, replenish the so-called antitrust, and also, it seemed to be contemplated that the money realized through that sale would allow the bank to be paid off on this particular loan. A decision was apparently made to not pay the bank. Now, does the record suggest that Nina had any role in that decision, or was that a decision that was made entirely by the guardian who was appointed to secure the license for the sale? Did she have any role in that decision? No, she did not, Your Honor. In addition, Your Honor, the scope of the charge that was given to the GAL in that case had nothing to do with the repayment of the Bank of America loan. The scope of the charge to the GAL was to assess whether or not it would be in Lucian's interest to sell the Bass River property. In fact, the GAL says nothing more than that the obligation of Lucian Collard should be satisfied. The GAL does not in any way touch upon the interests that were secured or purportedly secured. Your opponent seems to say that there was an expectation, and we can ask where that comes from, but there was an expectation that with the proceeds from that sale that the bank's loan would be paid off. I understand that they make that argument, but if you look at the GAL report, the scope of the GAL's task had nothing to do with the obligation to Bank of America. In fact, the probate court order does not mention the purported HELOC loan, the repayment of the loan, or whether the mortgage was valid. I understand that Wilmington is seizing upon one observation outside the scope of the GAL's charge to suggest that somehow a failure to object to that observation is relevant in this proceeding. But for purposes of this proceeding, Your Honor, even if the GAL analysis were relevant, and it's not, all the GAL observed was that Lucian had a debt. No one disputes that Lucian had a debt, Your Honor. The question in this case is not whether Lucian Collard had a debt during his lifetime. The question is whether that debt, not having been pursued by Bank of America through the estate, can be passed through to a legatee of the estate simply because the legatee inherited money. That is the question presented in this case, Your Honor. There is no evidence. Counsel, let's step back. As I read your brief, you said, look, this was on cross motions for summary judgment. There are factual disputes. The matter has to be remanded. The district court committed an error of law when he did not consider the reasonable expectation of the parties. He did not, for example, consider that your client, Nina, had told Bank of America from the get-go that he didn't, Lucian didn't own the property, that the loan was improper, that those objections were continued, and no, the conclusion you'd like to draw is that no commercially reasonable lender in Bank of America's shoes would have reasonably expected that Nina was going to end up paying off this loan. Then, furthermore, Wilmington, when it succeeds to the loan, is on notice of all of those facts and, nonetheless, takes no steps and does not sue within the one-year probate period to sue the estate to recover it. Okay, given your arguments, I was a little, you know, I wondered why do you want us to remand as opposed to enter judgment in your favor? But I'll tell you, your brief says that there are facts in dispute and it ought to be remanded. So that was an argument in the alternative, Your Honor, to the extent that was not clear. I apologize, but the argument made with regard to those facts was, at most, the case should be remanded. We believe, or at least the case should be remanded. We believe that the facts establish that there was no nexus between this property and the transaction. We only point out that to the extent the court reaches the equitable question, which is distinct from the lease. Okay, I got it. You've got an issue of law, no nexus, therefore you don't get into reasonable expectation. That's it. If you have to get into reasonable expectation, then maybe it ought to be remanded, but on your first point, no remand is needed. I would only add that our argument, of course, would be it should be remanded, Your Honor. Yes. But, counsel, aren't there, I mean, there are equitable doctrines that do not require a nexus. Isn't that true? Oh, yes, Your Honor. Sure. There are. As we've laid out, and as the record reflects, these facts do not fit any circumstance where an equitable lien has been awarded. You can have a circumstance where the maker of the loan is a stranger to the owner of the property, but the record has to reflect, the evidence has to demonstrate in that circumstance that there was a benefit conferred upon the owner of the property. Typically, Your Honor, that would be a discharge of a mortgage or improvements made to the real property. In other circumstances, it could be the payment of outstanding taxes or insurance on the property. So to say that there is no nexus with regard to the transaction, that is true. There are other circumstances where it can be allowed, but there is no case in Massachusetts that finds an equitable lien on the fact alone that a legatee has inherited from an estate post its full and complete probing. All the other circumstances, Your Honor, involve factors which are not presented in this circumstance. Thank you. Thank you, Attorney Moriarty. If you could mute and Attorney DeLinks, please proceed. Thank you very much. Good morning again, Your Honors. Marissa DeLinks on behalf of the Plaintiff Appellee Wilmington. I have a question just to start it off. Sure. Thank you. If Bank of America had conducted its due diligence, what would they have found? They would have found, I believe, Your Honor, that Lushen Collart owned one-third interest in the Harwich Port property as beneficiary of a nominee trust, which under Massachusetts law, for purposes of his own liability, charges him with one-third interest of the property. He was able to, our position is that he was able to promise to repay the debt by encumbering his one-third interest as owned as beneficiary of the nominee trust. I want to ask, I want to turn to- Counsel, just to follow up on Judge Toriawaya's question. Yes, sorry. He did a lot more than that, right? He did a lot more than that, right? He encumbered much more than just his interest in the property. That's exactly right. He did, but we're not challenging his ability to have encumbered the other two-thirds of the property. But I think it's important to note that Attorney Moriarty's position that Lushen Collart did not own any part of this property is not exactly correct, and the district court did not find that. The district court found that he wasn't able to mortgage his one-third interest in the property that he absolutely owned because he held it in trust, and that gave rise to the district court's decision to invalidate the mortgage and to grant an equitable lien on the property. Excuse me, judges, I apologize for interrupting the attorney's presentation. I'm under the impression that there may be a problem with the YouTube stream and we may not be public right now, so I'm only interrupting to make sure that we are, in fact, public. I wonder if IT could let me know that? Okay, thank you. I apologize, judges. We've had a report that they're not hearing it. If we're public, I'm going to let it continue. I apologize. Thank you. As I was saying, I think it's a misstatement to say that Lushen did not own any portion of this property and was no way connected to the Harwich Brook property. That's just not so. As the beneficiary of the nominee trust under Massachusetts law, Lushen was the owner of the property for purposes of liability. Because of that, I will say that with regard to the argument that Judge Lynch pointed out that the shortened statute of limitations should apply in this case, at the time Lushen passed away in 2013 until 2015, this was a secured loan. Bank of America was a secured creditor, and therefore, the shortened statute of limitations does not apply. No, there was a ... Bank of America may have thought it was a secured creditor, but going back to the original questions, it was on notice that its lending was being questioned on the assertion that Lushen had no right whatsoever to mortgage that property. I take it you're arguing that if we were to resolve the one-third interest in your favor, and there's actually law against you on that point, but if we were to resolve that in your favor, judgment cannot be entered as a matter of law, but it would have to be remanded if we thought there were some problems. I do not believe it needs to be remanded, Your Honor. I think the judgment can be affirmed, because if, as you say, we are able to show that there was not an error of law with regard to the nexus, then the next question is whether the reason ... I would say that you are the one who articulated that if there was a one-third ownership interest, although he took out a mortgage for much more than the one-third ownership interest, that that is sufficient to supply the nexus. I've not said anything about whether that argument is correct or not. I understand that, Your Honor, and I'm sorry that you took it that way. I was trying to respond to your question to say that if, for some reason, this court did find that, then it's our position that there is no issue of fact, because the next question we turn to is whether the reasonable expectation of the parties had an expectation that this loan would be paid off. That turns to ... No, no, no. It's not would be paid off, that the legatee here would be the one to pay it off. Not just it would be paid off. Well, it's not the legatee would pay it off. It's that the property would have a lien on it that, once sold, the bank would be paid off the amount of the loan, and that has ... Can I just ... No, Judge Trelaya, please go ahead. No, I had no question at this point. Oh, I'm sorry. It's all right. So, why can't Nina Collard be in this equitable environment where issues of morality and equity come into play? Why can't she be fairly portrayed as a completely innocent party who now finds her home, burdened with a lien for which, arguably, she bears absolutely no responsibility, no culpability for? Why isn't she, in any fair assessment of the facts here, a completely innocent party? I think, Judge, that goes to your question of earlier, which is what exactly occurred with regard to the license to sell, and why was the guardian ad litem appointed to evaluate what was in the best interests of Lucien with regard to that license to sell? And, in fact, the report that the guardian ad litem issued ... That's about four minutes left. Page 494 of the record, she absolutely says, as Your Honor indicated, that once the proceeds are at ... that we state in our record, that Your Honor was referring to in our brief, once the proceeds from the closing are received, then the $900,000 will be returned to Ann's estate, and that the $500,000 equity line from the Harwich Brook property must be repaid. So, there was an expectation at that point in time by all of the parties, including the court, in terms of the license to sell, that the $500,000 equity line would be repaid from the sale of the Bass River property. Why does Nina ... In what way is she responsible for that representation by the guardian? She's not, but she did not object to it before the probate court. And then thereafter, it was after that, Your Honor, that Judge Lynch, that her lawyer, Jennifer Roberts, sent the letters directly to Wilmington saying that she challenged the validity of the mortgage. And then it was thereafter that Jennifer Roberts, Nina's attorney ... I'm sorry. She doesn't object in a GAL proceeding that has nothing to do with her, but shortly thereafter, she sends a letter to Wilmington saying, you've got a problem here. I don't understand why she has any obligation to object. I think she had an obligation at that point in time to correct the court when it issued the license to sell. But the court doesn't say who is going to pay. I understand that, Your Honor. And I think the other thing that occurs is that it's her attorney, which is imputed to her, Judge Lipez, that makes the decision not to pay the mortgage. And then her attorney, who also advises the guardian, John Conathan, not to pay the mortgage back. The same attorney. And he makes his own decision as the guardian, right? He makes his decision, he says in his deposition testimony, based on the advice of his counsel. That's what he does. I'm sorry, of his counsel? Yes. The guardian, John Conathan, hired Jennifer Roberts as the attorney for the guardianship. The same attorney that was representing Nina Colart in the petition to appoint the guardianship. Yes. Maybe she has a conflict of interest, but how does that make Nina responsible? If Roberts is acting as the GAL's lawyer? No. Roberts was not acting as the GAL's lawyer, Your Honor. I'm sorry. She was acting as the guardian's lawyer. The conservator that was appointed over Lucian's estate. Who was paying the loan off until he received the advice of Jennifer Roberts, Nina's lawyer. Now, Nina had an interest in the guardianship because she petitioned for it herself. And Lucian objected to it. But that's, you know, beyond the point. I think that my point was trying to show the court why there are reasonable expectations. And I think it's important to understand that that's an objective standard, not a subjective standard. So even if. And you put in no evidence other than the GAL about what the reasonable expectations of a commercially reasonable lender, loaning a home equity loan, a mortgage type doctrine on property that wasn't wholly owned by the person seeking the mortgage. There's no evidence in the record that you put in as to the reasonableness of either Bank of America's action or Wilmington's action. I'm not sure what evidence there would be, Your Honor. A bank loans money to a person in exchange for a mortgage on the property, whether a But normally banks would check out whether the person actually owns the property, which is being put up as security. And apparently none of that was done here. You simply relied on a representation made by a self-interested person trying to get money from the bank. Who did own one third interest in that property. And perhaps you made a mistake. Did your bank find that out at the time? No, it didn't bother to look, did it? Just one further quick question. Just one further quick question. Wait a minute. Do you want to answer that question? I was just going to say that I cannot say that it did or it didn't, Your Honor, because it's not in the record before the court. That's right. You are the custodian of the bank records and you didn't produce any such evidence. Judge Lopez? Yeah, just just quickly. Your client did not seek to, when Lucian, the probate of Lucian's estate, you did not attempt to collect this indebtedness from the estate. Isn't that correct? The bank did not. That's correct, because at the time the mortgage was still valid. Yes. So that's the explanation of why the assumption was that there was no need to make a claim against the estate because the mortgage secured that debt. Was that the judgment that was made? That's my understanding, as well as the fact that the mortgage required the mortgage, the language in the mortgage required us to pursue the property before it pursued a deficiency judgment on the note. So there'd be no reason to fault the bank for not pursuing its claim through the estate proceedings. Is that your position? That is our position. Yes, Your Honor. Okay. All right. Thank you. Thank you. Thank you. At this time, if Attorney DeLinks would mute and if Attorney Moriarty would please present rebuttal. Two minutes. Very briefly, Your Honor, I just want to address one point. The fact of the matter is the mortgage was never valid. At most, Bank of America thought it was a mortgagee. It was not a mortgagee. And when you talk about whether or not the bank should be faulted with regard to its decision, its business decision, not to pursue this unsecured debt in the context of the probate proceeding, one needs simply look back on what due diligence they did to even give them the ability to assess whether or not they had an unsecured debt relative to Lucien Collard or whether they had a mortgage. If they looked and they did the due diligence, they would have determined they did not, in because this property was all held in trust and the mortgage itself was purportedly granted by Lucien Collard being an individual person. So they took the business decision not to proceed with their pursuit of an unsecured debt in the probate court at their own risk. And they knew or should have known that they did not have the adequate analysis to make a decision in that regard. But who should bear the responsibility for that, Your Honor? And I did say one point, but there's one additional point. Just want to note that Wilmington has abandoned its cross-appeal in this case. It has accepted the district court's decision that Lucien Collard did not have the ownership interest sufficient to pledge any part of the Harwich Port property as collateral. If it did, then his making of a mortgage in his individual capacity would have been sufficient. So to say that he had some, and I said it would have been an overstatement to say he had no connection to the property. He didn't have the legal connection to the property sufficient to make this an action of an overstatement. That's time. Thank you, Your Honor. Thank you, Counsel. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.